IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY E. PRICE** | : | CIVIL ACTION |
| *Plaintiff-pro se* | : | |
| | : | NO. 18-1778 |
| v. | : | |
| | : | |
| **COMMONWEALTH CHARTER** | : | |
| **ACADEMY - CYBER SCHOOL** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 AUGUST 13, 2019

## MEMORANDUM OPINION

**INTRODUCTION**

Presently, before this Court are *cross-motions for summary judgment* filed by Plaintiff Mary E. Price ("Guardian"), individually, in her own right and as legal guardian of minor child JH, and by Defendant Commonwealth Charter Academy – Cyber School ("CCA"). [ECF 20, 21].[1] These motions address Guardian's appeal of the decision issued by the Pennsylvania Special Education Hearing Officer ("Hearing Officer") in an underlying due process litigation brought by Guardian pursuant to the Individuals with Disabilities Education Act ("IDEA"),[2] 20 U.S.C. § 1400 *et seq*. The question posed herein is whether the Hearing Officer committed error in finding that

---

[1] The Court is treating Guardian's *memorandum for summary judgment on the administrative record*, [ECF 21], as a motion for summary judgment. This Court also considers the parties' responses, [ECF 24, 25], the parties' supplemental briefs concerning Guardian's retaliation claim, [ECF 31, 32], and Guardian's response to CCA's supplemental brief. [ECF 33].

[2] The Individuals with Disabilities Education Act was amended and renamed the Individuals with Disabilities Education Improvement Act, effective July 1, 2005. *See* Pub. L. No. 108-446, 118 Stat. 2647, 2803 (2004). Notwithstanding this change in the name of the statute, courts and litigants, including the parties in this action, continue to refer to this statute as the IDEA. *See, e.g.*, *H.E. v. Walter D. Palmer Leadership Learning Partners Charter School*, 873 F.3d 406, 408 (3d Cir. 2017). For clarity, this Court will refer in this Memorandum Opinion to this statute as the IDEA.

CCA offered minor JH a free and appropriate public education ("FAPE") despite CCA not granting JH's request for homebound instruction. The relevant issues have been fully briefed and are ripe for disposition. For the reasons stated herein, CCA's motion for summary judgment is granted and Guardian's motion for summary judgment is denied. Therefore, the decision of the Hearing Officer is affirmed.

**BACKGROUND**[3]

Guardian obtained physical custody of minor JH in October 2013, and of JH's educational decision-making rights in January 2014. [ECF 20-2 at 3]. JH has an anxiety disorder and ADHD. [*Id.* at 6]. Following a dispute between Guardian and the public-school district where JH attended, Guardian removed JH from that school district in spring 2014, and enrolled JH in CCA during the 2014-2015 and 2015-2016 school years. [*Id.* at 3-4].

CCA provides all instruction online. [*Id.* at 6]. That is, CCA teachers' lectures are broadcast via online classrooms, which students may watch either live or as recordings at the convenience of the student. [*Id.*]. Class assignments, tests, and communications between teachers and students are conducted online. [*Id.*]. CCA neither restricts nor regulates where students are located when they access its software. [*Id.*]. JH primarily accessed CCA's software from a computer in Guardian's home. [*Id.*].

During JH's enrollments, disputes arose between Guardian and CCA regarding CCA's implementation of the independent educational plan ("IEP") that transferred with JH from the school district to CCA. [*Id.* at 4-5]. Guardian filed several due process complaints, some of which

---

[3] The facts are taken primarily from the Hearing Officer's factual findings, which are deemed to be *prima facie* correct. *See S.H. v. State-Operated Sch. Dist. of Newark,* 336 F.3d 260, 270 (3d Cir. 2003) ("Factual findings from the administrative proceedings are to be considered *prima facie* correct."). Additional facts which are largely undisputed, have been taken from the administrative record, supplements thereto, and the parties' respective filings. Any factual disputes, to the extent relevant, are noted.

2

were decided in favor of Guardian, and some were not; most are not particularly relevant to the present matter. [*Id.*].

In April 2017, JH turned seventeen years of age. His April 2017 IEP, as modified, included thirty minutes per week of virtual counseling, one-to-one support from an Instructional Assistant ("IA") for two hours per school day, and one-to-one support from a Board Certified Behavior Analyst ("BCBA") for one hour per week. [*Id.* at 7]. The IA and BCBA services were to be provided by CCA in person at JH's home, not online. [*Id.*]. CCA asserts that the IA and BCBA services were offered to JH, but that JH did not utilize either service. [*Id.*]. Guardian disputes this assertion in her memorandum and argues that:

> The [the Hearing Officer's] Decision falsely states Guardian did not communicate with the individuals retained by [CCA] to provide BCBA and IA services. At the hearing, Guardian testified that she spoke with several of the related service providers. She further stated that after explaining JH's diagnoses, deficits, and anxiety concerns, each of the providers indicated they had not been provided this information by [CCA]. Additionally, each of the providers stated they were not qualified to work with JH.

[ECF 21 at 21]. However, in the portion of the hearing transcript Guardian cited to in support of these assertions, Guardian testified only that several service providers called her, and that she told them "if [JH] resumed CCA's online program, then [she] would keep their information and possibly call them back to start services if he came out of homebound instruction." [Hr'g Tr. at 120-121].

On October 7, 2017, Guardian submitted a letter to CCA from JH's psychiatrist which provided, in its entirety, the following:

> [JH] is a patient of this psychiatrist at this center. It is recommended as medically indicated that, in view of [JH's] current level of anxiety in [JH's] present school program, [JH] be provided homebound instruction at this time.

[*Id.*]. With the psychiatrist's letter, Guardian requested a copy of CCA's homebound instruction policy and that CCA draft a plan of action for the psychiatrist's review. [*Id.*]. However, CCA does not have a homebound instruction policy. [*Id.*]. A representative of CCA responded in a letter to Guardian that CCA does provide homebound instruction compliant with relevant laws and regulations when recommended for psychological or psychiatric reasons. In the same letter, the representative advised Guardian that CCA would need additional information from JH's psychiatrist and needed to discuss with the psychiatrist the kinds of academic tasks suitable for JH. Accordingly, CCA's representative requested that Guardian sign a release allowing CCA to communicate with the psychiatrist to substantiate through medical records the need for homebound instruction. [*Id.* at 8; Administrative Record, S-5]. CCA wanted to communicate with JH's psychiatrist to ensure that the psychiatrist understood that CCA was a cyber school, and to gain an understanding of what the psychiatrist meant by homebound instruction in a cyber setting. [ECF 20-2 at 8].

Guardian refused to consent to CCA communicating with the psychiatrist. [*Id.*]. In a December 2017 email, the CCA representative informed Guardian that CCA needed clarification from JH's psychiatrist as to the appropriate support needed for homebound instruction, given that CCA's program did not require students to leave the home, and Guardian had refused the in-home services that were already part of JH's IEP. The representative further explained that "CCA cannot move forward with your request without more medical information because the provisions that are typically part of Homebound Instruction are already provided through our program." [Administrative Record at S-10 at 2].

On January 8, 2018, an administrative evidentiary due process hearing was convened before the Hearing Officer. The issues at the due process hearing were: (1) whether CCA violated

4

the IDEA in its response to Guardian's request for homebound instruction; and (2) whether CCA violated JH's right to a FAPE under the provisions of the IDEA, Section 504 of the Rehabilitation Act ("Section 504"), and/or the Americans with Disabilities Act ("ADA") by refusing to provide homebound instruction. On February 16, 2018, the Hearing Officer issued a decision finding no violation of the IDEA or JH's right to a FAPE. [ECF 20-2]. In the decision, the Hearing Officer noted the following:

> Pennsylvania draws a distinction between "*homebound instruction*" and "*instruction in the home*." *Homebound instruction* is temporary education service in the home for students with and without disabilities who cannot be physically present at school for three-month periods of time (subject to reevaluation and extension). *Instruction in the home* is a special education placement under the IDEA which Pennsylvania charter and cyber schools are obligated to make available to children with disabilities. [*Id.* at 9-10]. The Hearing Officer opined that "[m]ore likely than not, Pennsylvania laws do not require cyber charter schools to provide homebound instruction as a regular education intervention," given that "cyber charter schools provide instruction in the home through their typical pedagogical systems," and "[t]he applicability of regulations designed to enable students who cannot physically go to school on a temporary basis to get some education is questionable in circumstances in which students never have to physically go to school, and typically receive all educational services in their home." [*Id.* at 10]. Regardless, the Hearing Officer assumed, *arguendo*, that Pennsylvania's homebound instruction regulations apply to CCA. [*Id.*].
>
> The Hearing Officer considered whether CCA's response to the request for homebound instruction violated the IDEA. In denying this claim, the Hearing Officer found that the letter to CCA from JH's psychiatrist was hearsay and could not be relied upon to conclude that JH required homebound instruction, but rather was evidence only of what was communicated to CCA. [*Id.* at 11]. The Hearing Officer noted, however, that even if the letter was not hearsay, it did not constitute preponderant evidence because it did not reveal the basis of the psychiatrist's conclusions, provided no information about what educational activities JH could and could not participate in, and strongly suggested that the psychiatrist did not understand the nature of CCA's program. [*Id.*]. Assuming that Pennsylvania's homebound instruction laws applied, the Hearing Officer concluded that:
>
>> "[T]he psychiatrist's letter would only require [CCA] to do what it did: reach out to get more information about what [JH] is and is not medically permitted to do. The Guardian blocked that effort by refusing to provide consent. In the absence of additional

5

information, [CCA's] denial of the Guardian's request for homebound instruction was proper." [*Id.*].

Even assuming that the psychiatrist's letter was sufficient evidence to support homebound instruction, the Hearing Officer further concluded that, pursuant to the applicable regulations, CCA would have had the discretion to deny the request. [*Id.*]. The Hearing Officer also concluded that, even assuming that CCA violated Pennsylvania law by denying the request, he lacked jurisdiction over the claim because the claim was rooted in Pennsylvania's regular education laws and not in the IDEA. [*Id.* at 11-12].

Regarding whether CCA violated JH's right to a FAPE under the IDEA by refusing to provide homebound instruction, the Hearing Officer found that Guardian appeared to base this claim on CCA's failure to send a "qualified special education teacher with a background in teaching students with anxiety disorders" to JH's home. [*Id.* at 12]. In denying this claim, the Hearing Officer reasoned that no evidence was presented in support of JH's need for in-person instruction, given that the psychiatrist's letter did not specify such a need. [*Id.*]. Nonetheless, the Hearing Officer found that CCA's efforts to provide in-person services had been thwarted by Guardian. [*Id.* at 12-13].

On April 26, 2018, Guardian timely filed a complaint in federal court appealing the administrative decision. On July 31, 2018, she filed an amended complaint, bringing claims under the IDEA, the ADA, Section 504, and 42 U.S.C. § 1983 (for retaliation), and essentially argued that the Hearing Officer erred by: (1) concluding that CCA did not violate the IDEA in its response to Guardian's request for homebound instruction; (2) concluding that JH received a FAPE; and (3) failing to accurately define the issues raised in Guardian's due process complaint and during the administrative hearing. [ECF 13].

**LEGAL STANDARD**

Under the IDEA, institutions that receive federal education funding are required to provide all children with disabilities a free and appropriate public education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A); § 1412(a)(1)(A); *Endrew F. ex rel. Joseph F. v. Douglas Sch. Dist.*, 137 S. Ct. 988, 993 (2017); *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012). A FAPE "includes both 'special education' and 'related services.'" *Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. §

1401(26), (29)). Once a disabled child is identified, the School District must develop an independent educational plan or IEP for the child that is "reasonably calculated to enable [the student] to make progress appropriate in light of the child's circumstances." *Endrew*, 137 S. Ct. at 1001; *see also* 20 U.S.C. § 1414(d) (defining individualized education program).[4] "The adequacy of a given IEP turns on the unique circumstances of the child for who it was created." *Id*. It must "set out a plan for pursuing academic and functional advancement." *Id*. at 999 (citing 20 U.S.C. § 1414(d)(1)(A)(i)(I)-(IV)). Although the state is not required to "maximize the potential of every handicapped child," it must provide an education that confers a "meaningful benefit" to each child. *Ridley School Dist. v. M.R*. 680 F.3d 260, 268 (3d Cir. 2012). The benefit must be substantial, not minimal. *Endrew F*., 137 S. Ct. at 1001.

The core of the IDEA is the collaborative process between parents and school officials to fashion the IEP. *Id.* (citing 20 U.S.C. § 1414). This collaboration among the parents and educators ensures careful consideration of the child's individual circumstances. *Id*. "It is through the IEP that [t]he 'free appropriate public education' required by the Act is tailored to the unique needs of a particular child." *Id.* at 1000 (internal quotations omitted). The IDEA "requires that every IEP include 'a statement of the child's present levels of academic achievement and functional performance,' describe 'how the child's disability affects the child's involvement and progress in the general education curriculum,' and set out 'measurable annual goals, including academic and functional goals,' along with a 'description of how the child's progress toward meeting' those goals will be gauged." *Id.* at 994 (citing 20 U.S.C. § 1414(d)(1)(A)). "An IEP is not a form

---

[4] An IEP is a "written statement for each child with a disability" that includes a statement of the child's: (1) present levels of achievement and performance; (2) measurable annual goals; and (3) the special education and supplementary aids and services to be provided to the child, as well as other details regarding the child's educational program. 20 U.S.C. § 1414(d)(1)(A)(I-IV).

document.  It is constructed only after careful consideration of the child's present levels of achievement, disability, and potential for growth." *Id.* at 999.

If parents believe that an IEP fails to provide their child with a FAPE, they may seek an administrative "impartial due process hearing." 20 U.S.C. § 1415(f).  "Any party aggrieved by the findings and decision" made in the administrative proceeding "shall have the right to bring a civil action" in state or federal court.  20 U.S.C. § 1415(i)(2)(A).  The district court shall review the record of the administrative proceedings, shall hear additional relevant, non-cumulative and useful evidence at the request of a party, and, based on a preponderance-of-the-evidence standard, grant such relief as it deems appropriate.  20 U.S.C. § 1415(i)(2)(C); *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 760 (3d Cir. 1995).  The district court must give "due weight" to the hearing officer's decision.  *Bd. of Educ. v. Rowley*, 458 U.S. 176, 205-06 (1982).

The concept of "due weight" requires a district court to conduct a "modified *de novo* review" of the administrative proceedings.  *Shore Reg. High Sch. Bd. of Educ. v. P.S.,* 381 F.3d 194, 199 (3d Cir. 2004); *S.H. v. State-Operated Sch. Dist. of the City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  Thus, courts are not free to "substitute their own notions of sound education policy for those of the educational agencies they review." *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751, 757 (3d Cir. 1995) (citing *Rowley,* 458 U.S. at 205-06).  A district court reviewing an administrative fact-finder's conclusions must defer to such factual findings unless the court identifies contrary, non-testimonial evidence in the record, or explains why the record, read in its entirety, compels a different conclusion.  *S.H.*, 336 F.3d at 270.  The district court's review of a hearing officer's application of legal standards and conclusions of law, however, requires no deference to the administrative hearing officer's legal determinations; rather, the legal

determinations are subject to plenary review. *Id*. at 271; *Warren G. v. Cumberland Cty. Sch. Dist.*, 190 F.3d 80, 83 (3d Cir. 1999).

The party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged. *M.R.*, 680 F.3d at 270 (citations omitted). As the Supreme Court noted "[t]he burdens of pleading and proof with regard to most facts have been and should be assigned to the [party] who . . . seeks to change the present state of affairs." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (quoting 2 McCormick on Evidence § 337 at 412 (7th ed.)). Under the IDEA, it is the party "aggrieved by the findings and decision" of the hearing officer that seeks to change the present state of affairs. *See* 20 U.S.C. § 1415(i)(2)(A). "Absent some reason to believe that Congress intended otherwise," the burden of persuasion falls where it usually does, on the party seeking relief. *Schaffer*, 546 U.S. at 57-58.

**DISCUSSION**

With these legal principles in mind, this Court will separately address the primary issues presented; *i.e*: whether the Hearing Officer erred by concluding (1) that CCA did not violate the IDEA in its response to Guardian's request for homebound instruction; and (2) that JH received a FAPE.

*IDEA Claims*

To provide context, a brief overview is in order of the statutes, regulations, and Pennsylvania Department of Education ("PDE") guidance provisions pertaining to homebound instruction in Pennsylvania. The relevant statutes and regulations include provisions authorizing, but not requiring, schools to temporarily excuse students from attendance in school under certain circumstances and authorizing, but not requiring, schools to offer homebound instruction during

9

the aforementioned periods of excused absence. These provisions, contained in Chapter 11 of 22 Pa. Code, provide:

> (a) A principal or teacher *may*, upon receipt of satisfactory evidence of mental, physical or other urgent reasons, *excuse a student for nonattendance during a temporary period*, but the term ''urgent reasons'' shall be strictly construed and does not permit irregular attendance. A school district shall adopt rules and procedures governing temporary excusals that may be granted by principals and teachers under this section. Temporary excusals may not exceed 3 months.
>
> (b) A school district, area vocational technical school, charter or independent school *may* provide students temporarily excused under this section with homebound instruction for a period not to exceed 3 months. A school district, area vocational technical school, charter or independent school may request approval from the Department to extend the provision of homebound instruction, which shall be reevaluated every 3 months. When a student receives homebound instruction, the student may be counted for attendance purposes as if in school. . . .

22 Pa. Code § 11.25 (emphasis added); *see also* 24 P.S. § 13-1329(a) (statute authorizing the temporary excusal of students from attending school for urgent reasons). While the statute indicates that the entirety of Chapter 11 of Title 22 of the Pennsylvania Code applies to cyber charter schools, *see* 24 P.S. § 17-1749-A(b)), it is unclear how the above homebound instruction regulation would operate with regard to a cyber student who, by definition, is already excused from physically attending school. Indeed, the PDE issued guidance advising families that enrollment in a cyber charter school is an "alternative to homebound instruction." [Administrative Record, S-14 at 1]. The same guidance provides:

> Cyber charter schools are online public schools that provide online instruction to students in the student's home without cost to the family. Due to the time and effort to enroll in a cyber charter school, this is for long-term solutions where the student is expected to be out for months.

[*Id.*]. PDE guidance further provides that "[a] doctor does not 'order' homebound instruction but rather provides the diagnosis to enable the school district to make an informed decision on how to best provide for the student's education." [Administrative Record, S-15 at 1].

10

As to Guardian's contention that the Hearing Officer erred in concluding that CCA did not violate the IDEA regarding Guardian's request for homebound instruction, this Court finds the contention without merit. Specifically, this Court agrees that Pennsylvania's homebound instruction regulations do not apply to CCA, as these regulations are clearly designed for schools where students' physical presence is required. Further, the homebound instruction regulations are inapplicable to cyber schools where their students can access lectures and school work from any location and at any time of their choosing. Even if the homebound instruction regulations apply to CCA, this Court finds that CCA would have the discretion to deny the request, more so when denying the request was based on the insufficiency of the psychiatrist's letter and Guardian's refusal to consent to CCA communicating with the psychiatrist.

This Court also finds that the Hearing Officer did not err in concluding that CCA did not violate JH's right to a FAPE under the IDEA by "refusing to send a qualified special education teacher with a background in teaching students with Anxiety Disorders" to JH's home. This Court agrees with the Hearing Officer that no evidence was presented specifying such a need for JH. Furthermore, Guardian forewent CCA's offers of in-person services pursuant to JH's IEP.

Guardian also contends that the Hearing Officer failed to accurately identify the issues raised in Guardian's due process complaint. Specifically, Guardian contends that the issue should have been framed as: "Did [CCA's] failure to approve or deny the recommendation for homebound instruction while simultaneously providing no form of instruction to JH, from October 7 to present, constitute a denial of a FAPE pursuant to the IDEA and a denial of access to a FAPE pursuant to Section 504 and the ADA?" [ECF 21 at 34]. In support of framing the issue as such, Guardian essentially argues that although JH stopped taking his online courses through CCA after the impasse caused by Guardian's refusal to sign the release form, CCA arbitrarily marked many of

his absences as excused as a cover to avoid having to report him to his "district of residence" as a truant. [*Id.* at 25-26]. In other words, Guardian contends that CCA denied JH a FAPE by neither formally approving or denying the homebound instruction request, but still marking his absences as excused, thus keeping him clear from truancy status, which would have implicated a state involvement requiring him to receive instruction.

However, the evidence of record supports the findings that: (1) Guardian and JH *chose* for JH to stop participating in his classes while the homebound instruction request was pending, (2) CCA was not mandated to offer homebound instruction in the first place, and (3) the request was effectively denied by CCA because Guardian refused to sign the release for the psychologist's medical records and opinion. Notably, Guardian has no support for the contention that CCA kept him from being in truancy status because JH was no longer legally required to attend school when the homebound instruction request was made. Under Pennsylvania law, "compulsory school age" is "until the child reaches seventeen (17) years of age." 24 P.S. § 13-1326. JH turned seventeen years old in April 2017. Thus, by the time the homebound instruction request was made in October 2017, JH was no longer of compulsory school age and, therefore, by definition, could not have been in truancy status. *See Id.* (defining "Truant" as "having incurred three (3) or more school days of unexcused absences during the current school year by a child subject to compulsory school attendance under this article); *id.* § 13-1327(a) (noting that the school attendance requirement applies only to students who are of compulsory school age). For the reasons set forth, this Court finds the argument fails to establish that JH was denied a FAPE and, thus, without merit.

*ADA and Section 504 Claims*

To obtain relief under the ADA or Section 504, the evidence must show that a student with disability, who was otherwise qualified to participate in a program of a recipient of federal funding,

was denied the benefits of the program or was otherwise subject to discrimination. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999); *McDonald v. Com. of Pa., Dept. of Public Welfare, Polk Ctr.*, 62 F.3d 92, 94-95 (3d Cir. 1995). A showing of deliberate indifference on the part of the school is also required. *S.H. Ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262-63 (3d Cir. 2013). Here, Guardian failed to show that JH was denied participating in CCA's academic program because of his disabilities, let alone that CCA was deliberately indifferent to his disabilities. To the contrary, as discussed above, Guardian thwarted CCA's efforts to provide JH in-home services in accordance with his IEP. Further, Guardian and JH, not CCA, made the decision for JH to stop participating in CCA's academic program. Thus, Guardian's ADA and Section 504 claims fail as well.

*42 U.S.C. § 1983 Retaliation Claim*

Neither party's summary judgment motion addressed Guardian's § 1983 retaliation claim. In an Order dated June 5, 2019, this Court noted such, as well as the fact that Guardian did not appear to have raised this claim in the administrative proceedings. [ECF 30]. Accordingly, the Court ordered the parties "to file briefs addressing whether the retaliation claim at Count IV was exhausted, whether this Court has jurisdiction over Count IV, and any other pertinent issues or arguments related to the merit of the retaliation claim at Count IV." [*Id.*]. In her supplemental brief and response to CCA's supplemental brief, Guardian concedes that she did not raise her § 1983 claim in the administrative proceedings but contends that her failure to do so is excused because the relief she is seeking was not fully available in the administrative proceeding. [ECF 32, 33]. CCA, in turn, argues that the relief Guardian sought in her § 1983 claim was available under the IDEA; that she was therefore required to exhaust her administrative remedies; and that,

because she did not raise it in the administrative proceedings, this Court lacks subject-matter jurisdiction over the claim. [ECF 31]. This Court agrees with CCA.

The IDEA requires the exhaustion of administrative remedies, *i.e.*, the raising of a claim in the administrative proceedings. *See* 20 U.S.C. § 1415(f), (i)(2)(A). This exhaustion requirement extends to non-IDEA claims that seek relief that is available under the IDEA. *Id.* § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. *12101 et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 *et seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."); *see also Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) ("Exhaustion of the IDEA's administrative process is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA."). The Third Circuit has held that § 1983 claims brought by parents claiming retaliation as a result of their efforts to vindicate their child's right to FAPE can be asserted under the IDEA and, thus, must be administratively exhausted. *S.D. by A.D. v. Haddon Heights Bd. of Educ.*, 722 F. App'x 119, 126 (3d Cir. 2018). Accordingly, because Guardian concedes that she did not raise her § 1983 retaliation claim in the administrative proceedings, this Court concludes the claim is unexhausted, and, therefore, this claim is dismissed for a lack of subject-matter jurisdiction.

**CONCLUSION**

This Court finds that the administrative record supports the facts and the legal conclusions reached by the Hearing Officer. These findings are consistent with the requirements of the IDEA.

Therefore, for the reasons set forth, Guardian's retaliation claim at Count IV is dismissed for lack of subject-matter jurisdiction, the decision of the Hearing Officer is affirmed, Guardian's motion for summary judgment is denied, and CCA's motion for summary judgment is granted. An appropriate Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO,* U.S.D.C. J.